# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE DIVISION

**JIMMIE DALE BREAUX #608789**      **CASE NO. 6:17-CV-01618 SEC P**

**VERSUS**                                    **UNASSIGNED DISTRICT JUDGE**

**KEITH DEVILLE**                        **MAGISTRATE JUDGE WHITEHURST**

## REPORT AND RECOMMENDATION

Pro se petitioner Jimmie Dale Breaux ("Breaux"), an inmate in the custody of Louisiana's Department of Corrections, filed the instant petition for writ of habeas corpus pursuant to 28 U.S.C. §2254 on December 13, 2017.  Petitioner attacks his 2012 conviction for molestation of a juvenile under the age of 13, and the 25 year sentence imposed thereon by the 27th Judicial District Court, St. Landry Parish. This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.

## I.    *Factual Background*

The facts, as set forth by the Louisiana Third Circuit Court of Appeal, *State of Louisiana v. Breaux,* 2013-917 (La. App. 3. Cir. 2/12/14), 2014 WL 575844, are as follows:

> On March 31, 2011, Defendant, Jimmie Breaux, was indicted for molestation of a juvenile under the age of thirteen, a violation of

La.R.S. 14:81.2. On March 19, 2012, the State filed "State's Notice of Intent to Introduce Other Crimes Evidence Pursuant to La.Code Evid. Article 412.2." A hearing was held on April 17, 2012, on the State's motion. Following testimony and arguments, the trial court ruled that the other crimes evidence was admissible in this case. A jury trial commenced on July 30, 2012, following which Defendant was found guilty as charged. On August 10, 2012, Defendant filed a "Motion for Post-Verdict Judgment of Acquittal." On November 29, 2012, Defendant's motion was denied.

Defendant was sentenced on March 28, 2013, to a sentence of twenty-five years imprisonment, to be served without the benefit of parole, probation, or suspension of sentence. Defendant filed a "Motion to Reconsider Sentence" on April 10, 2013, which was denied on June 27, 2013. Defendant has now perfected an appeal, wherein he alleges that the evidence was insufficient to sustain the verdict of molestation of a juvenile under the age of thirteen.

At trial, the following testimony was given. Corrine Deshotel testified that the victim, A.B., and her younger brother had been living with her and the children's grandfather for about four years. She was the children's step-grandmother. She stated that the two children were removed from their mother's home by the Office of Community Services because she had been having problems with drug abuse. At first, the children were allowed only supervised visitation with their mother, but after a few years they were allowed longer, unsupervised visits. At the time of trial in July, the victim was going on twelve years old and entering the sixth grade in school. Ms. Deshotel stated that the girl was doing well in school and was a normal preteen child. Of the Defendant, Ms. Deshotel stated that she had known him for several years and had liked him. He became A.B.'s mother's live-in boyfriend shortly after the children were removed from her custody.

Ms. Deshotel testified that one day, during the summer, after the children had had a week-long visitation with their mother, another granddaughter, R.S., told her that Defendant had sexually abused her. She made R.S. call and tell her mother. Ms. Deshotel then called A.B. into her bedroom and asked her if Defendant had ever sexually abused her. She said the girl hung her head for a moment and then

admitted that he had touched her genitals during the last visitation. She asked A.B. why she did not say anything. A.B. said he had threatened he would whip her if she told. When she called A.B.'s mother, she denied the allegation and said that A.B. did not like Defendant and just wanted him out of the house. Ms. Deshotel took the girl to the police the next day, and arrangements were made to take the girl to Stuller Place, an advocacy center for abused children.

A.B. testified that she had liked Defendant when her mother was around, but when she was gone, he treated her and her brother differently. She said that he would "blame stuff on us." When she tried to tell her mother, she "wouldn't listen." She described an incident when her mother and brother were not in the house. She was watching television in her mother's bedroom when Defendant came into the room and locked the door behind him. He got on the bed with her. He turned her over, pulled up her nightgown, pulled down her shorts, and inserted his finger into her vagina. She said that she told him to stop, but he just told her to shut up. She wiggled away from him and went to her room. She said she hurriedly changed her clothes and snuck out of the house. She did not tell her mother because Defendant told her he would beat her if she did. She testified that an older cousin, R.S., told her that the same thing had happened to her. She said that R.S. told her she had to tell her grandmother.

R.S., who was fifteen at the time of trial, testified that during a visit with her grandmother, she found A.B. crying in her room. A.B. told her she never wanted to go back to visit her mother. R.S. asked her why and then guessing the problem, told her about Defendant having sex with her when she was just seven. She also stated that he had threatened to kill her family if she ever told. She said that she told her grandmother first about it happening to her, then told her grandmother about it happening to A.B.

Finally, Ms. Nicolette Joseph, a forensic interviewer for the Children's Advocacy Center, testified that she interviewed the victim. She identified a video tape made of the interview. The redacted tape was shown to the jury.

3

## II.    *Procedural Background*

On July 30, 2012, a jury trial commenced in the 27th Judicial District Court, Parish of St. Landry, whereby a jury found Breaux guilty of one count of molestation of a juvenile under the age of 13.  He was subsequently sentenced to 25 years in prison.

Petitioner filed a direct appeal in the Third Circuit Court of Appeal, alleging a sole assignment of error that the evidence adduced at trial was insufficient to sustain his conviction.  On February 12, 2014, the Third Circuit affirmed the conviction. *State of Louisiana v. Breaux,* 2013-917 (La. App. 3. Cir. 2/12/14), 2014 WL 575844.  He applied for writs of certiorari in the Louisiana Supreme Court, and on September 26, 2014, his writ application was denied without comments.  *State of Louisiana* v. *Breaux*, 2014-474 (La. 9/26/14), 149 So.3d 262.  He did not apply for certiorari in the United States Supreme Court. [Doc. 1, p. 3, ¶9(h)]

On December 15, 2014, Breaux filed an Application for Post-Conviction Relief in the trial court, asserting the following claims for relief: (1) trial court abused its discretion and committed constitutional error in improperly closing the courtroom; (2) trial court abused its discretion in allowing other crimes to be admitted into evidence; (3) trial counsel was ineffective for the following reasons: (a) failure to interview, subpoena and call witnesses; (b) failure to investigate; (c) failure to object to the closed courtroom; (d) failure to inform the defendant of his

4

right to testify;(e) failure to bring authority to the court in opposition to the bolstering of victims' testimony; and (f) failure to excuse himself in order to avoid conflict; and (4) ineffective assistance of appellate counsel for the following reasons: (a) failure to brief closed courtroom issue; (b) failure to raise the La. C.E. 412.2 issue; and (c) failure to brief the issue of bolstering the victims' testimony.  The trial court denied petitioner's application as to all issues except his claim of ineffective assistance of counsel as it related to the decision not to call certain witnesses and whether petitioner was advised of his right to testify. [Rec. Doc. 1-3, pp. 26-39] Following an evidentiary hearing on July 29, 2015, on those two specific issues only, the trial court denied the remaining claims.  [Rec. Doc. 1-3, pp. 43-80]

On or about October 19, 2015, Breaux filed a writ application in the Third Circuit Court of Appeal, bearing Docket number KH-15-00991, which was denied on March 23, 2016. [Rec. Doc. 1-3, p. 113]  Petitioner sought supervisory and/or remedial writs in the Louisiana Supreme Court, in Docket Number 2016-KH-0909, on April 23, 2016; same was denied on September 22, 2017.  *State ex rel Jimmie Breaux v. State of Louisiana*, 2016-KH-0909 [Rec. Doc. 1-3, pp. 114-115]

On December 13, 2017, Breaux filed the instant petition, which raises the following claims:  (1) petitioner was denied his 6th Amendment right to a public trial; (2) the closed trial court proceedings were in violation of his 14th Amendment rights; and (3) petitioner was denied his 6th Amendment right to effective assistance of

counsel for the following reasons: (a) failure of counsel to avoid conflict of interest; (b) failure to investigate; (c) failure to interview, subpoena and/or call known witnesses; (d) failure to object to legal authority and move for a mistrial based on the state's repeated action of bolstering an alleged victim's testimony; and (e) failure to inform and/or call petitioner to testify on his own behalf.

### III.    Law and Analysis

### A.    Standard of Review - 28 U.S.C. § 2254

The Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, 28 U.S.C. § 2254, governs habeas corpus relief. The AEDPA limits how a federal court may consider habeas claims. After the state courts have "adjudicated the merits" of an inmate's complaints, federal review "is limited to the record that was before the state court[.]" *Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011). An inmate must show that the adjudication of the claim in state court:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)-(2).

6

A decision is "contrary to" clearly established Federal law "if the state court arrives at a conclusion opposite to that reached by . . . [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." *Dowthitt v. Johnson*, 230 F.3d 733, 740-41 (5th Cir. 2000) (*quoting Williams v. Taylor*, 529 U.S. 362 (2000)). "The 'contrary to' requirement refers to holdings, as opposed to the dicta, of . . . [the Supreme Court's] decisions as of the time of the relevant state court decision." *Id.* at 740. Under the "unreasonable application" clause, a federal habeas court may grant the writ only if the state court "identifies the correct governing legal principle from . .. [the Supreme Court's] decisions but unreasonably applies the principle to the facts of the prisoner's case." *Id.* at 741.

Section 2254(d)(2) speaks to factual determinations made by the state courts. Federal courts presume such determinations to be correct; however, a petitioner can rebut this presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

**B.    Timeliness**

Title 28 U.S.C. §2244(d)(1)(A) provides a one-year statute of limitations for the filing of an application for writ of habeas corpus by persons, such as petitioner, who are in custody pursuant to the judgment of a State court. This limitation period generally runs from "...the date on which the judgment became final by the

conclusion of direct review or the expiration of the time for seeking such review..."
28 U.S.C. §2244(d)(1)(A).

The petitioner's conviction became final on December 23, 2014, when his time for seeking review in the United States Supreme Court on direct appeal expired. Petitioner timely filed a motion for post-conviction relief in state court December 15, 2014, which was denied in part on July 1, 2015, and in part after a hearing on July 29, 2015. Petitioner then filed writ applications with the Third Circuit and Supreme Court, which were denied March 23, 2016, and September 22, 2017, respectively. Petitioner's application for federal habeas review filed on December 13, 2017, is timely due to the time suspended during the resolution of his post-conviction relief motion.

## C.    Plaintiff's Claim

### 1.  Violation of Sixth Amendment Right to Public Trial

Petitioner contends that his Sixth Amendment right to a public trial was violated when the Court sealed the courtroom due to the juveniles testifying, as well as the sensitive nature of the matter.  After raising this issue for the first time on collateral appeal, the trial court found this claim to be procedurally barred due to a lack of contemporaneous objection at the time of the closing of the courtroom.  The court cited to Louisiana Code of Criminal Procedure Article 841(A), which states in pertinent part that "an irregularity or error cannot be availed of after verdict unless

it was objected to at the time of the occurrence." In the instant matter, Petitioner did not object at the time of the closing of the courtroom, however, this Court will address the merits of Petitioner's claim.

The Court agrees with the Respondent's assertion that the trial court was well within its discretion, and followed the bounds of the law, in closing the courtroom. The Sixth Amendment to the United States Constitution guarantees a public trial to all criminal defendants. *United States v. Osborne*, 68 F.3d 94, 98 (5th Cir. 1995). This right exists to ensure the fairness of the proceedings and to encourage witnesses to come forward with information. *Id*. "The right to a public trial is not absolute, however, and must be balanced against other interests essential to the administration of justice." *Id*. This matter involved highly sensitive testimony from a juvenile victim and another juvenile victim from a previous incident. The interest in protecting the higher values and sensitive nature of the proceedings were paramount. The court closed the courtroom due to the nature of the proceedings. [Rec. Doc. 12-11, pp. 205-206]

Moreover, the trial court ruled that the Petitioner failed to show how opening the courtroom would have changed the outcome of the trial. [Rec. Doc. 1-3, p. 29] *Waller v. Georgia*, 467 U.S. 39, 104 (1984), relied upon by the Petitioner, held that in the event a reviewing court deems the closing of the courtroom was improper, the remedy should be appropriate to the violation." *Id*. at 50. There, a suppression

hearing was closed to the public, and the Court ruled, "A new trial need be held only if a new, public suppression hearing results in the suppression of material evidence not suppressed at the first trial, or in some other material change in the position of the parties." (emphasis added). *Id*. at 50. Here, the trial court held that there would be no material change in the position of the parties, and the outcome of the trial would not have been different had the courtroom been fully open to the public. The State called four witnesses at trial – the juvenile victim in this matter, the juvenile victim from the previous matter, the step-grandmother of the juvenile victim, and the Stuller Place/Hearts of Hope interviewer. As noted by the State, the courtroom would have only been open during the testimony of the grandmother and potentially the interviewer. In addition, the courtroom was not completely closed to viewers as the legal guardians of the juvenile victim were allowed to remain in the courtroom, and the courtroom was open to the public for jury selection and sequestration of witnesses. Accordingly, addressing the merits of this claim, the Court finds that the trial court did not abuse its discretion in closing the courtroom and the Petitioner has not shown that the outcome would have been different had the courtroom not been closed. As such, this claim is without merit.

## 2. Violation of his 14th Amendment rights

Petitioner next alleges that the trial court's allowance of other crimes evidence pursuant to La. C.E. Art. 412.2 rendered the trial fundamentally unfair. R.S., A.B.'s

cousin, testified at the 412.2 hearing that the Defendant is her stepmother's brother, and he "messed with her in a bad way" when she was seven years old. R.S. was sixteen at the time of the hearing. In a similar fashion to the incident that occurred with A.B. (the victim in the matter at bar), the Defendant walked into the bedroom where R.S. was watching television. He took off her clothing and "messed with her" and tried "sticking his in [her]." The Defendant stuck his penis in her front private area. He then threatened to kill her or her family if she told anyone. R.S. did not tell anyone because she was scared. When R.S. and A.B. were at their grandmother's house, A.B. told R.S. what the Defendant did to her. R.S. then told A.B. that the Defendant did the same thing to her, and their grandmother needed to know. R.S. informed her grandmother of the Defendant's actions toward her and A.B.  [Rec. Doc. 12-7, pp. 73-78; 81-82.]

Louisiana Code Evidence Article 412.2 provides, in pertinent part:

A. When an accused is charged with a crime involving sexually assaultive behavior, or with acts that constitute a sex offense involving a victim who was under the age of seventeen at the time of the offense, evidence of the accused's commission of another crime, wrong, or act involving sexually assaultive behavior or acts which indicate a lustful disposition toward children may be admissible and may be considered for its bearing on any matter to which it is relevant subject to the balancing test provided in Article 403.

The referenced article, La. Code Evid. art. 403, provides that a balancing test be considered to determine whether evidence should be excluded:

> Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or waste of time.

The trial court made a determination that R.S.'s testimony was credible and that the probative value of her testimony outweighed the prejudicial effect.

> I'm going to tell you that I do find there's clear and convincing evidence that said act occurred. Mr. Wagley says [A.S.] related a specific date and time but so did [R.S.]. She pinpoints it directly to her brother's ninth birthday and she was two years younger, ergo, she was seven. So I find it meets the standards of 412.2. I do not believe that the prejudicial value outweighs the probative effect. [Rec. Doc. 12-7, p. 86]

As an initial matter, Petitioner has failed to establish any error by the state trial court which would trigger review under the due process standards set forth above. *Robinson v. Whitley*, 2 F.3d 562, 567 (5th Cir. 1993) (where there is no showing of error by a trial court, there can be fundamental unfairness); *Neal v. Cain*, 141 F.3d 207, 214 (5th Cir. 1998). The Louisiana Supreme Court has held that La. Code Evid. art. 412.2, under which the evidence was admitted, was enacted to lower the obstacles to admission of "propensity evidence" in sexual assault cases, especially those involving children. *State v. Williams*, 830 So.2d 984, 986-987 (La. 2002). In *State v. Williams*, the Louisiana Supreme Court likened Article 412.2 to Fed. R. Evid. 413, except to note that the federal rule declared that such evidence "is admissible" and the state rule declares that it "may be admissible." *Id*.

12

In this case, the probative value of providing information about the other incidents of sexual acts far outweighed any potential prejudice. There is no indication in the state court record that the other crimes testimony misled the jury into an improper verdict.  Breaux has not demonstrated in the instant case that the other crimes evidence constituted inadmissible evidence which could have rendered his trial fundamentally unfair. Because he has not demonstrated error in the admission of the evidence, he "has no basis for any alleged due process violation" or for a denial of a fundamentally fair trial. *Robinson*, 2 F.3d at 567; *Neal v. Cain*, 141 F.3d at 214.  Accordingly, this claim is without merit.

### 3.  Denial of 6th Amendment right to effective assistance of counsel

Breaux claims that his trial counsel, Randy D. Wagley, was ineffective for the reasons set forth below.  As previously stated, the trial court denied all but two of Petitioner's claims of ineffective assistance of counsel on the pleadings.  A hearing was subsequently held wherein Wagley testified regarding his representation of Petitioner.

Claims of ineffective assistance of counsel are gauged by the guidelines set forth by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052 (1984). Under *Strickland*, a petitioner must demonstrate: (1) that his counsel's performance was deficient, requiring a showing that the errors were so serious such that he failed to function as "counsel" as guaranteed by the Sixth Amendment, and

(2) that the deficiency so prejudiced the defendant that it deprived him of a fair trial. *Id*. at 2064. The first prong does not require perfect assistance by counsel; rather, petitioner must demonstrate that counsel's representation fell beneath an objective standard of reasonableness. *Id*. Judges have been cautioned towards deference in their review of attorney performance under *Strickland* claims in order to "eliminate the potential distorting effect of hindsight." *Rector v. Johnson*, 120 F.3d 551, 563 (5th Cir. 1997) (*quoting Strickland*, 104 S.Ct. at 2065) (quotations omitted). Accordingly, the court should "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id*.

The second prong requires the petitioner to show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 104 S.Ct. at 2055-56. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 2056. In other words, the petitioner must show prejudice great enough to create a substantial, rather than conceivable, likelihood of a different result. *Pape v. Thaler*, 645 F.3d 281, 288 (5th Cir. 2011) (*quoting Cullen v. Pinholster*, 563 U.S. 170, (2011)). "Both of [*Strickland's*] prongs must be proven, and the failure to prove one of them will defeat the claim, making it unnecessary to examine the other prong." *Williams v. Stephens*, 761 F.3d 561, 566-67 (5th Cir. 2014).

### a. Failure for counsel to avoid conflict of interest

First, Petitioner argues that his counsel was ineffective due to a statement made in the presence of his mother that as the father of a daughter he should not represent Petitioner.

"A conflict of interest exists when defense counsel places himself in a position conducive to divided loyalties." *United States v. Santos*, No. CR. 04-60024-02, 2006 WL 2524160, at *3 (W.D. La. Aug. 29, 2006) *citing United States v. Infante*, 404 F.3d 376, 392 (5th Cir.2005). "An actual conflict exists only when counsel is compelled to compromise his duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client. In other words, an actual conflict exists 'when the attorney knows that his clients' interests diverge and must then choose between the interests of multiple clients, or be compelled to compromise his duty of loyalty.'" *United States v. Patt*, No. 6:05-CR60047-01, 2010 WL 4879017, at *10 (W.D. La. Oct. 27, 2010) *report and recommendation adopted*, No. 6:05-CR-60047-01, 2010 WL 4876015 (W.D. La. Nov. 22, 2010). Magistrate Judge Hanna discussed this issue in *United States v. Patt*, *supra*, and indicated as follows: "To prevail, a defendant must identify 'some plausible defensive strategy or tactic [that] might have been pursued but was not, because of the conflict of interest.'" *United States v. Patt*, 2010 WL 4879017, at *10.

15

Petitioner in this matter has failed to articulate the existence of an actual conflict. This Court agrees with the Respondent's contention that the record fully supports the sufficient representation by counsel. There is no indication that counsel's one comment about having a daughter altered his performance. To constitute a conflict, defense counsel must be in a position to be forced to divide loyalties and "compromise his duty of loyalty or zealous advocacy to the accused by choosing between or blending the divergent or competing interests of a former or current client." *United States v. Patt*, *supra*. This was not the situation in the present matter and this Court finds that no conflict existed.

Petitioner also alleges a conflict existed due to his trial counsel's prior employment as a prosecutor. During the evidentiary hearing on July 29, 2015, before Judge Jason Meche, on Petitioner's Application for Post-Conviction Relief, Randy Wagner, trial counsel, testified that he left the St. Landry Parish District Attorney's Office three years prior and began working for the indigent defense board, where he had worked prior to his work as a prosecutor. [Rec. Doc. 1-3, p. 13-14] Petitioner argues that his trial was three years prior to that hearing, so his counsel may have been working as a prosecutor at the time he was appointed to, and was representing Petitioner, thereby operating under a conflict. The Court agrees with the State's contention that Mr. Wagley was likely testifying that he stopped prosecuting three years prior to the trial, not the hearing on post-conviction relief.

16

The State argues, and this Court concurs, that this argument is without merit and not practicably possible.

### b. Failure to investigate

Petitioner next alleges that his trial counsel failed to complete a full investigation when handling his case, including asking for copies of the other crimes evidence reports.

"The defendant must prove actual prejudice before relief will be granted. It is not sufficient for the defendant to show the error had some conceivable effect on the outcome of the proceedings; rather, [he] must show that but for counsel's unprofessional errors, there is a reasonable probability the outcome of the trial would have been different." *Strickland, supra*. Furthermore, "a decision regarding trial tactics cannot be the basis for a claim of ineffective assistance of counsel unless counsel's tactics are shown to be so ill chosen that they permeate the entire trial with obvious unfairness.' *Medellin v. Dretke*, 371 F.3d 270 (5th Cir. 2004), cert. granted, 543 U.S. 1032, 125 S. Ct. 686, 160 L. Ed. 2d 518 (2004) an*d cert. dismissed as improvidently granted*, 544 U.S. 660 (2005). Petitioner fails to prove that there was a reasonable probability the outcome of the trial would have been different had his counsel "further investigated" the issues he raises in his application.

If an alleged error falls "within the ambit of trial strategy" it does not "establish ineffective assistance of counsel." *State v. Sias¸* (La.App. 3 Cir. 12/10/02); 861 So.2d

829. *State v. Bienemy*, 483 So. 2d 1105 (La.App. 4 Cir.1986). Moreover, as "opinions may differ on the advisability of a tactic, hindsight is not the proper perspective for judging the competence of counsel's trial decisions. Neither may an attorney's level of representation be determined by whether a particular strategy is successful." *State v. Brooks*, 505 So. 2d 714, 724 (La.1987). "Accordingly, when defense counsel focuses on some issues to the exclusion of others, there is a strong presumption that he or she did so for tactical reasons, rather than through sheer neglect, and this presumption has particular force where an ineffective assistance claim is asserted by federal habeas petitioner based solely on the trial record." *Yarborough v. Gentry*, 540 U.S. 1 (2003). "The law of the Supreme Court and [the Fifth Circuit] lead us to conclude that the presence or absence of prejudice, both with respect to claims of ineffective assistance of counsel at the trial and appellate levels, hinges upon the fairness of the trial and the reliability of the judgment of conviction resulting therefrom." *Goodwin v. Johnson*, 132 F.3d 162, 174 (5th Cir. 1997).

Petitioner admits that defense counsel told him that he did not further investigate and/or ask for copies of the other crimes evidence reports because it was damaging to Petitioner's case. [Rec. Doc. 1-2, p. 16] This was clearly trial strategy. Petitioner has not shown that trial counsel's trial tactics were "so ill chosen that they permeate[d] the entire trial with obvious unfairness. *Medellin, supra.* As argued by the State, Petitioner submits mere speculation as to what could have been

investigated and fails to particularize if further investigation would have altered the outcome of the trial.  This Court finds that trial counsel's representation was not deficient and as such, this argument is without merit.

### c.  Failure to interview, subpoena and/or call known witnesses

Petitioner argues that his trial counsel failed to interview, subpoena and/or call known witnesses.  The Fifth Circuit "has repeatedly held that complaints of uncalled witnesses are not favored in federal habeas review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative." *Day v. Quarterman*, 566 F.3d 527, 538 (5th Cir. 2009) (citation omitted). *See also Charles v. Stephens*, 736 F.3d 380, 390-91 (5th Cir. 2013) (same), *cert. denied*, 135 S. Ct. 52 (2014). The Supreme Court specified in *Strickland* that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *See Strickland*, 466 U.S. at 690-91. In applying *Strickland*, the Fifth Circuit accordingly held that "the failure to present a particular argument or evidence is presumed to have been the result of strategic choice." *Taylor v. Maggio*, 727 F.2d 341, 347-48 (5th Cir. 1984).  Federal courts "will not question a counsel's reasonable strategic decisions." *Bower v. Quarterman*, 497 F.3d

459, 470 (5th Cir. 2007), cert. denied, 553 U.S. 1006 (2008). Habeas corpus relief is unavailable if a petitioner fails to overcome the presumption that counsel made sound strategic decisions. *Del Toro v. Quarterman*, 498 F.3d 486, 491 (5th Cir. 2007), cert. denied, 552 U.S. 1245 (2008).

At the evidentiary hearing on petitioner's post-conviction application, Mr. Wagley testified regarding his trial strategy related to calling of witnesses, first stating that he spoke with the Petitioner more than 5 times prior to trial to discuss witnesses and trial prep. [Rec. Doc. 1-3, p. 59] He recalled two witnesses mentioned by Petitioner and spoke with them- Ashely Lovergne Hebert and Bernadine Deshotel. *Id.* Counsel testified that he and Petitioner spoke about Bernadine Deshotel's parents being witnesses because they would be able to say the victim was not there the dates the alleged crime occurred. *Id.* at p. 60. However, it was subsequently determined that the dates the parents would testify to were not correct. *Id.* Mr. Wagley testified that he always tells his clients that "this is his opinion, this is why I think we should or shouldn't do this, but the ultimate decision is yours." *Id.*

The following line of questioning with Mr. Wagley occurred at the hearing on post-conviction relief regarding calling additional witnesses to testify:

> Q. Okay; and do you recall the defendant saying, "No I disagree with your opinion, I want them to testify"?
>
> A. No. Well, this case was kind of peculiar. We may have planned to call some witnesses.

Q. Tell me what happened as to why witnesses were not called?

A. And then the statue with this charge –

Q. Falls under –

A. – is based on, one (1) of the elements was that the defendant be over the age of eighteen (18). I believe it was an element that had to be proven. During the trial it turns out that issue was never brought up in the state's case in chief. When the State rested, there was a recess. We had discussions –

Q. Who's we? I'm sorry, I'm just trying to make a record, so.

A. I'm sorry, Mr. Breaux, myself, Bernadine, and possibly the other lady, whoever, I don't recall – I just don't remember her name at all. I explained that I thought that it was an element that had to be proved, that it had not been proved, that as a strategy the best thing to do was not call any witnesses, because if we called any witnesses and then the prosecutor realized that she had forgot to prove that element, she could ask our witnesses to, you know, how old he is, or she could possibly call rebuttal witnesses to our witnesses and then get that evidence in in some way. I explained that although someone might sit here and look at you and have an opinion that you're over eighteen (18), but it had to be proved as a fact and that an appeals court would read the record and they don't know what you look like, they don't know if you have gray hair, they don't know if you looked over eighteen (18) and they cannot just make that assumption. It has to be in the record. We went back and forth on that a while and then I made the decision not to call any witnesses. I even recall specifically explaining that the odds are that you will get convicted because the jury is not going to understand, or either won't understand or won't accept that technical defense and explanation but that the chances on appeal would be good on that issue and on the issue of the prior crimes evidence that we had had a hearing on before. So –

Q. You didn't promise him about that, you just said it would be a better chance?

21

A. Right. I said in my opinion that I felt like the State had not proved an essential element of the crime –

Q. Okay.

A. – and to give them an opportunity to do that was not in his best interest.

Q. So that's –

A. And I explained that I thought that he would probably get convicted, but moving forward it would probably be the best thing.

Q. So this was complete trial strategy on your part not to call witnesses?

A. Complete, at that point –

Q. Right.

A. – you know, any intention or plan to call witnesses before that, you know, I had no idea the State wouldn't put on evidence of that element, so when it happened that decision was made pretty much in a twenty minute (20) recess.

Q. All right, but you did discuss it with the defendant?

A. Oh yeah, for pretty much the whole recess, yeah.

Rec. Doc. 1-3, pp. 61-62.

In the present case, counsel made the strategic decision not to call additional witnesses after determining their testimony would be more harmful than helpful. Petitioner has failed to show that counsel's representation was deficient on this matter.

**d. Failure to object to legal authority and move for a mistrial based on the state's repeated action of bolstering an alleged victim's testimony.**

Petitioner alleges that his counsel was ineffective for failing to object to, and move for a mistrial based upon, the prosecutor "bolstering the victims' testimony" by asking her if she was being truthful. [Rec. Doc. 1-2, p. 26] The following testimony is at issue:

Q: So I'll go back and ask you. I explained that day we visited it was very important for you to be honest and truthful. Is that true?

A: Yes, Ma'am.

…

Q: Okay. Are you telling us the truth today, hundred percent truth, without any kind of changing or changing any words or anything at all when you're talking about what he did when he touched you under your clothing in your private area? Is that a hundred percent truth?

A: Yes Ma'am.

Q: Okay, Are you being careful when you talked about, you know whether he was nice…or mean?

A: Yes Ma'am.

Q: Okay, you aren't being careful about that. Okay. Are you trying to be deceitful at all? Untruthful?

A: No Ma'am.

Q:  No?  Okay.  And that's your sworn testimony today that you understand how important it is today that you are absolutely truthful and honest?

A:  Yes Ma'am.

Q:  Okay. And you are being one hundred percent absolutely truthful and honest?

A:  Yes Ma'am.

…

Q: And you understand that - - how important it is that we are fully honest and truthful about the touching?

A:  Yes Ma'am.

Q:  And these people [the jury] need to know you're being one hundred percent truth (sic) and honest about that touching.

A:  Yes Ma'am.

[Rec. Doc. 12-8- Rec. Doc. 12-9]

The Court agrees with the State's argument that defense counsel opened the door to the prosecutor's line of questioning when, during cross-examination, he questioned the victim's credibility.  [Rec. Doc. 12-8, pp. 239-244]   Thus, the prosecutor's questioning on re-direct was permissible, and an objection to same would be without merit. Failure to raise meritless objections does not result in the ineffective assistance of counsel. *Clark v. Collins*, 19 F.3d 959, 966, 1994 U.S. App. LEXIS 7797 ("Failure to raise meritless objections is not ineffective lawyering; it is

the very opposite."). Moreover, trial counsel *did,* in fact, object at the outset of the prosecutor's questioning. [Rec. Doc. 12-8, pp. 247-250]

Furthermore, as stated by Respondent, the prosecutor's line of questions were within the bounds of the law. During closing arguments, the prosecutor in *Stewart v. Dir., TDCJ-CID*, No. 6:11CV223, 2011 WL 7468807, at *7 (E.D. Tex. Dec. 16, 2011), *report and recommendation adopted*, No. 6:11CV223, 2012 WL 761662 (E.D. Tex. Mar. 6, 2012), made the statement that the victim was "not hiding anything" and that she was "telling the truth" as she "always told the truth." The Petitioner in that case alleged that counsel was ineffective for failing to object to these statements. That court held:

> Improper remarks by a prosecutor "are a sufficient ground for habeas relief only if they are so prejudicial that they render the trial fundamentally unfair." *Hughes v. Quarterman*, 530 F.3d 336, 347 (5th Cir. 2008) (citations omitted). "Such unfairness exists only if the prosecutor's remarks evince both persistent and pronounced misconduct or . . . the evidence was so unsubstantiated that (in probability) but for the remarks no conviction would have occurred." Id. "The relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." *Id*. (citations omitted). A prosecutor's comments about the truthfulness of a witness' testimony generally is not improper, although a personal assertion by a prosecutor of a witness' testimony is impermissible. *Burkett v. Thaler*, 379 Fed. Appx. 351, 357 (5th Cir. 2010). In *Burkett*, a statement that the victim told the truth was deemed acceptable, but the prosecutor going further in stating that he investigated her claims and found her claims to be credible was found to be improper. *Id*. The statement was improper because the prosecutor was injecting himself as a witness. *Id*. By comparison, an argument that includes a statement that a witness "had no reason to lie" is not improper, and the jury ultimately

25

>  decides whether to believe the witness. *LaCaze v. Warden Louisiana*
>  *Correctional Institute for Women*, 645 F.3d 728, 738 (5th Cir. 2011).

*Id*.

Here, the State contends, and this Court agrees, that the prosecutor's line of questioning was even more innocuous than that of the prosecutor's closing remarks in *Stewart*. The questions were simply asked in response to defense counsel's questions attacking the victim's story, and it was the factfinders' duty to judge the credibility of her story and an objection . Accordingly, Petitioner fails to satisfy both prongs of *Strickland* as counsel's performance was not deficient and counsel had no grounds upon which to object. His objection would not have changed the outcome of the trial. As such, this claim has no merit.

### e. Failure to inform and/or call petitioner to testify on his own behalf

Finally, Petitioner contends that trial counsel did not inform him of his right to testify or call him to testify at trial.  He argues that had the jury heard his testimony, there is a reasonable probability that the outcome would have been different.  The Petitioner did have the right to testify. The record reflects that Petitioner's trial counsel informed him that he had the ultimate decision to testify; however, in his role as the Petitioner's trial attorney, he indicated to the Petitioner that his legal advice would be to have him not testify. [Rec. Doc. 12-4, pp. 213-215] In the post-conviction hearing, Petitioner's counsel indicated that he did inform the Petitioner that the decision to testify or not was his:

Q. Okay. Let me ask you about the defendant's right to testify. Defendant claims that you did not inform him of his rights to testify. Did you have a discussion with him of his rights to testify?

A. I can't specifically recall saying, you know, you know you have a right to testify and all of that, but in the context of our conversation about not putting on any evidence, that was part of it. You know, and not putting on any evidence mean you can't testify. I remember talking about, you know, the only thing you can say is, "I didn't do it" –

Q. Uh-huh

A. – and they're either going to believe or not believe the little girl. I explained that, you know, the way I believe that juries make credibility determinations is one thing that do is ask themselves, what does this person have to gain or lose from saying what they're saying. And the defendant, the answer is always, you know, either he's saying what he's saying because it's true and he didn't do it, or he's saying it because he don't want to go to jail. So, you know, that combined with the – the fact that I felt the prosecution had failed to prove that essential element of the crime, there was a determination that no one would testify for the defense.

Q. You were confident in your own mind that the defendant knew he had the right to testify?

A. Yeah.

[Rec. Doc. 12-4, pp. 214-216]

On cross-examination, Mr. Wagley further testified that prior to trial he and the Petitioner discussed the Petitioner testifying, which he wished to do at that time. Petitioner was simply going to state that he did not commit the crime. But after the State's case in chief, Mr. Wagley explained to Petitioner that he did not believe that the State had proven one of the essential elements of the crime- that the defendant

was over the age of 18.  [Rec. Doc. 1-3, p. 67]  He "just felt and that's what [they] discussed, that [Defendant] getting on the stand and saying, 'I didn't do it' would help not at all and the prosecutor asking him, 'How old are you?' would have destroyed the one really good technical defense that I thought we had." *Id*. at p. 68 He testified that he discussed this with the Defendant, and the Defendant appeared to understand. *Id*. He even confirmed that this was the route the Defendant wanted to take when the Judge asked if the defense had any evidence. Wagley testified:

> I recall saying, you know, "Are you sure, is that the route we're going to take, is that what you want to do?" and he had agreed prior to that, but I - - when the Court asked, I'm sure I asked again. You know, if - - whether or not he felt that I pressured him into making the decision I have no idea.  <u>The decision was ultimately his and I told him that. I didn't make that decision.</u>

*Id*.  On re-direct Mr. Wagley confirmed that this was "strictly one hundred percent" a trial strategy decision. *Id*. at p. 70.

The trial court, in ruling on the issue of the Petitioner's right to testify at his trial, stated:

> And with respect to the right to testify, Mr. Wagley specifically said it was his appreciation and his understanding that he believed the defendant knew he had a right to testify.  He did discuss it with him in the context of calling witnesses.  Obviously the defendant knew he had the right to testify because Mr. Wagley discussed with him the fact that you could testify to this, however, I believe its best – it's in your best interest not to testify.  We can only infer from that that he was informed that he had the right to testify, he knew he had the right to testify and it was a trial strategy decision not to testify.  It's all within that gambit of trial strategy.

*Id*. at p. 76.

Under the AEDPA, this federal court must defer to that state-court finding unless petitioner demonstrates that it "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2).  Moreover, such state-court factual findings are presumed to be correct, and petitioner may be granted relief only if he rebuts that presumption with clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Whitlock v. Dretke,* 129 Fed. App'x 880, 881 (5th Cir. 2005) ("This presumption of correctness applies to explicit and implicit findings of fact which are necessary to the state court's conclusions of mixed law and fact and to the state court's credibility determinations.").  In the instant case, Petitioner simply has not met his burden. He has offered no persuasive rebuttal to the state court's finding; rather, he essentially just invites this Court to substitute its own credibility judgments for those of the state court.  The Court cannot oblige. *See Marshall v. Lonberger*, 459 U.S. 422, 434 (noting that federal courts do not have "license to redetermine credibility of witnesses whose demeanor has been observed by the state trial court, but not by them"); *see also Summers v. Dretke*, 431 F.3d 861, 871 (5th Cir. 2005); *Galvan v. Cockrell*, 293 F.3d 760, 764 (5th Cir. 2002); *Schmidt v. Hubert*, Civ. Action No. 05-2168, 2009 U.S. Dist. LEXIS 96807, 2008 WL 4491467, at *21 (W.D. La. Oct. 6, 2008).

Moreover, the Court recognizes that "a criminal defendant has a constitutional right to testify in his own behalf; it is an aspect of his right to defend himself, a right held in *Rock v. Arkansas*, 483 U.S. 44, 51—53 (1987), to be implicit in the Fifth, Sixth and Fourteenth Amendments." *Underwood v. Clark*, 939 F.2d 473, 475 (7th Cir.1991). A habeas petitioner, however, has the burden of proving that he was denied this constitutional right. As the court explained in *Turcios v. Dretke*, 2005 U.S. Dist. LEXIS 34938, 2005 WL 3263918, *6 (S.D.Tex. 11/29/05), "a petitioner in a habeas proceeding cannot prevail on such a claim merely by stating to the habeas court that he told his trial attorney that he wished to testify and that his attorney forbade him from taking the witness stand. *Underwood v. Clark*, 939 F.2d 473, 475—76 (7th Cir.1991)." The *Underwood* court specifically noted the potential problem posed if a habeas petitioner, arguing that counsel unconstitutionally denied him his right to testify, is not required to satisfy his burden of proof, stating:

> There is grave practical difficulty in establishing a mechanism that will protect a criminal defendant's personal right (that is, a right not waivable by counsel) to testify on his own behalf without rendering the criminal process unworkable. It is extremely common for criminal defendants not to testify, and there are good reasons for this, as we have seen. Yet it is simple enough after being convicted for the defendant to say, 'My lawyer wouldn't let me testify. Therefore I'm entitled to a new trial.' That's what *Underwood* did. His affidavit, which is the only evidence bearing on the question, states, so far as pertinent here, 'I was denied the opportunity to testify at my own trial in that I told my attorney that I wished to testify on my own behalf. My attorney told me I could not testify.'

30

> We agree with the First Circuit's ruling in *Siciliano v. Vose*, 834 F.2d 29, 31 (1st Cir.1987), that this barebones assertion by a defendant, albeit made under oath, is insufficient to require a hearing or other action on his claim that his right to testify in his own defense was denied him. It just is too facile a tactic to be allowed to succeed. Some greater particularity is necessary-and also we think some substantiation is necessary, such as an affidavit from the lawyer who allegedly forbade his client to testify-to give the claim sufficient credibility to warrant a further investment of judicial resources in determining the truth of the claim.

*Underwood*, 939 F.2d at 475—76.

This Court finds that trial counsel was not deficient in advising Petitioner not to testify, that trial counsel's decision was a strategic one given the testimony that could have been elicited on cross-examination as a result, and further, and most importantly, the Court finds that Petitioner knowingly, voluntarily and intelligently waived his Sixth Amendment right to testify in his own defense.   Accordingly, this claim is also without merit.

### III.    Conclusion

**IT IS RECOMMENDED THAT** the instant application be **DENIED** and **DISMISSED WITH PREJUDICE**.

Under the provisions of 28 U.S.C. Section 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court.  A party may respond to another party's objections within fourteen (14) days

after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See, Douglass v. United Services Automobile Association, 79 F.3d 1415 (5th Cir. 1996).**

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, this court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant. Unless a Circuit Justice or District Judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. Within fourteen (14) days from service of this Report and Recommendation, the parties may file a memorandum setting forth arguments on whether a certificate of appealability should issue. See 28 U.S.C. § 2253(c)(2). A courtesy copy of the memorandum shall be provided to the District Judge at the time of filing.

THUS DONE in Chambers on this 29th day of November, 2018.

_____
**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**